MIXON *v.* SOVEREIGN CAMP, W. O. W.

(Division B.  Jan. 6, 1930.)

[125 So. 113.  No. 28291.]

Ross R. Barnett, of Jackson, for appellant.

Watkins, Watkins & Eager, of Jackson, for appellee.

Argued orally by **Ross R. Barnett**, for appellant, and by **P. H. Eager, Jr.,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

On April 16, 1920, there was issued by appellee to Dewey L. Mixon a policy of life insurance with appellant as beneficiary therein. The appellee, hereinafter referred to as the "Camp," is a fraternal order, and the policy is termed a "Universal whole life certificate." The certificate provided for the payment of a fixed monthly sum as a premium requirement, and further provided that in case of a failure to pay the said sum on or before the last day of each succeeding month the insured member "shall stand suspended and his beneficiary certificate shall be void."

The insured, Dewey L. Mixon, faithfully carried his said membership and beneficiary certificate until the month of November, 1927. On the 17th day of said month, while the said insurance was in full force, the said insured became seriously ill and was never thereafter at any time physically or mentally capable of attending to any sort of business, and of this illness he died on December 18, 1927. The premium amounting to less than two dollars due in November, 1927, was not paid, so that under the strict terms of the so-called certificate or policy the same became on and after December 1, 1927 of no further force or effect, and the said Camp refused payment of the insurance.

It appears that the amounts of the monthly premiums were fixed according to a uniform scale, based upon the -respective ages of the certificate holders, and at a sum safely sufficient to cover all reasonably probable contingencies. The experiences of the Camp had been such that beginning with the year 1920, the Camp had been able to refund annually to its members an amount equal to one monthly premium, and from and including that year down to 1926, this refund had been declared as a dividend, so called, and had been remitted every year to the members by check.

However, for the year 1926, that is to say, out of the earnings of the Camp for 1926, there was a surplus safely sufficient to make an amount equal to two monthly premiums or installments, and on December 31, 1926, the Camp wrote to all its members a fully explanatory letter, setting forth the facts, but notifying them that a change in the manner of the administration of this surplus earnings fund was being made, and in this letter there was, among other statements to the like effect, a paragraph which fairly summarizes what the Camp proposed to do, and in fact had done, with this surplus. That paragraph is as follows:

"Instead of paying this increased refund in cash, which required the writing of hundreds of thousands of checks and a tremendous amount of bookkeeping and general labor, as well as postage, and realizing that a great majority of our members are not carrying as much insurance as present-day conditions require, we have determined to give each member an amount of 'paid-up' insurance equal to that which two monthly installments would purchase at his present age. There will be no charge whatever for this insurance—it will simply be added to your certificate, and at the maturity of your certificate the additional amount will be paid to your beneficiaries."

There was inclosed with this letter the following paid-up certificate:

"Woodmen of the World Paid-Up Certificate No. 354679. The Sovereign Camp of the Woodmen of the World hereby certifies that the owner hereof has been granted paid-up insurance as shown by the records of said Woodmen of the World for a sum equal to the amount which two monthly installments of the annual assessment as heretofore paid by such member, will purchase based on his attained age at nearest birthday on January 1, 1927. A member can have only one paid-up certificate as of this date for each certificate of membership now held by him. This certificate is issued pursuant to authority contained in the resolution of the Executive Council as follows:

"Resolved, That all the members of the Sovereign Camp of the Woodmen of the World who have been such continuously for two years or more up to January 1, 1927, are hereby given paid-up insurance equivalent to the amount which two monthly installments of assessments as actually paid by each member will purchase upon the American Experience Table of Mortality and three and one-half per cent interest assumption. Said

paid-up insurance shall only be available as to each member in the event he continues his membership by the payment of all dues and assessments required of him in accordance with the terms of his certificate and the laws of the association. Should the membership of any such member become lapsed or suspended or void for any reason, said paid-up insurance hereby granted shall become suspended and of no effect and null and void.

"Issued at Omaha, Nebraska, this the 1st day of January, 1927.

"W. A. Fraser, Sovereign Commander.

[Seal.]

"Attest: J. T. Gates, Sovereign Clerk."

The main contention of appellant is that, whatever the form, the substance revealed by the foregoing facts is that this Camp had in its hands, at the date of the death, enough funds belonging to the insured to pay both the November and December premiums and thereby to keep the original certificate or policy in effect beyond the death; and thus appellant invokes the well-established rule that, "Where an insurance company has in its hands funds belonging to the insured, it is the duty of the company, under the law, to apply such fund to the payment of any premiums or assessments which may be due at the time by the insured, and the insurance company cannot escape liability by refusing to so apply such funds." National Life Ins. Co. v. Sparrow, 151 Miss. 387, 118 So. 195, 196, and authorities therein cited.

This brings us squarely to the question: Did the Camp have in its hands funds belonging to the insured? The said policy or original certificate contains not one word in respect to any dividends or surplus, and therefore no obligation to distribute or refund any such dividends or surplus arises out of the contract itself, as it is written. The constitution and by-laws of the order are not made a part of the record, nor is any part of either of them

in the record; consequently we can derive no aid from them. It follows therefore that so far as the record discloses, it was within the legal power and option of the Camp to retain all surplus and never declare a dividend or pay over a cent of surplus to any member. In Mut. Life Insurance Co. v. Breland, 117 Miss. 479, 78 So. 362, L. R. A. 1918D, 1009, it was said, referring to Mutual Life Ins. Co. v. Girard Life Ins. Co., 100 Pa. 172, that profits or dividends earned, but not declared as dividends or otherwise, cannot be treated as funds applicable to the payment of the premium.

If then there was no obligation, contained in the contract, by which the Camp was bound to declare any dividend or pay over to, or place to the credit of, any member or certificate holder any of the earned surplus, yet the Camp does so in a manner, may the court add anything, by way of legal consequence, to the effect of the exact manner in which the Camp had acted in doing what it had the right to refuse to do in any manner? What the Camp did was to issue a certificate of additional paid-up insurance, and that was the full extent of what it did. In other words, the amount of the two months' installments of premium was completely absorbed in payment for the additional insurance, and therefore no longer existed, even if it had ever existed, as something which, in the form of available funds, the insured was entitled to have either paid or credited to him. It must, as we think, be apparent without further comment, that it is not within legitimate judicial power to declare this act of the Camp to be something else than exactly what it was and is, which is to say, we cannot declare this act as the equivalent of that of making available a fund for the payment of premiums on the original certificate.

It is contended by appellant also that the course of conduct on the part of the Camp in the previous years

had amounted to a custom, and that the words of the paid-up certificate, above set out in full, after the word "Resolved" therein were printed in exceedingly fine type, with the design and purpose, and in this case with the effect, to mislead the insured, so that members would likely not discover that the previous custom was being changed, and that the insured Mixon, being an illiterate man, did not, in fact, understand from the said certificate that the two months' premium installments would not come to him by way of direct payment or credit as had been the case in past years. It is not permissible to sustain this contention, because the letter of the Camp, accompanying the said paid-up additional insurance certificate, when considered with due attention, fully explained the matter, and of course the suggestion of illiteracy cannot prevail, for the manifest reason that there cannot be two separate departments in the law of contracts, one for the educated and another for those who are not. Certainly the laws on insurance could never be administered on any such basis.

Finally, it is argued that because of the illness of the insured, and his helpless condition at the time of the default in the monthly installment, relief should be granted. The contract does not so provide; and so long as people continue to make these contracts, and legislation is not enacted to reasonably provide for, and protect in such a meritorious situation, the courts, much as their sympathies may be aroused by the misfortune of such cases, are powerless to intervene.

Affirmed.