**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 19, 2004**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-60794
_____

WASHINGTON MUTUAL FINANCE GROUP, LLC,

                                    Plaintiff - Appellant,

AMERICAN BANKERS LIFE ASSURANCE
COMPANY OF FLORIDA; AMERICAN
SECURITY INSURANCE COMPANY; UNION
SECURITY LIFE INSURANCE CO.;
AMERICAN BANKERS INSURANCE COMPANY
OF FLORIDA,

                        Intervenor Plaintiffs - Appellants,

                              versus

JOHN BAILEY; HELEN J. SPELLMAN,

                                    Defendants - Appellees.
_____

WASHINGTON MUTUAL FINANCE GROUP, LLC,

                                    Plaintiff - Appellant,

AMERICAN BANKERS LIFE ASSURANCE
COMPANY OF FLORIDA; AMERICAN
SECURITY INSURANCE COMPANY; UNION
SECURITY LIFE INSURANCE CO.;
AMERICAN BANKERS INSURANCE COMPANY
OF FLORIDA,

                        Intervenor Plaintiffs - Appellants,

                              versus

VIOLET SMITH,

                                    Defendant - Appellee.
_____

WASHINGTON MUTUAL FINANCE GROUP, LLC;
ET AL.,

                                                  Plaintiff - Appellant,

AMERICAN BANKERS LIFE ASSURANCE
COMPANY OF FLORIDA; AMERICAN
SECURITY INSURANCE COMPANY; UNION
SECURITY LIFE INSURANCE CO.;
AMERICAN BANKERS INSURANCE COMPANY
OF FLORIDA,

                              Intervenor Plaintiffs - Appellants,

                              versus

BEULAH TATE; ET AL.,

                                                  Defendants,

BEULAH TATE; JOHN PHINIZEE;
MIRIAH PHINIZEE,

                              Defendants - Appellees.
_____

WASHINGTON MUTUAL FINANCE GROUP, LLC,

                                                  Plaintiff - Appellant,

AMERICAN BANKERS LIFE ASSURANCE
COMPANY OF FLORIDA; AMERICAN
SECURITY INSURANCE COMPANY; UNION
SECURITY LIFE INSURANCE CO.;
AMERICAN BANKERS INSURANCE COMPANY
OF FLORIDA,

                              Intervenor Plaintiffs - Appellants,

                              versus

WILLIE NMI CURRY; ET AL.,

                                                  Defendants,

WILLIE NMI CURRY,

                                       Defendant - Appellee.
_____

             Appeals from the United States District Court
                for the Northern District of Mississippi
_____


                                2

Before GARWOOD, JOLLY, and CLEMENT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case requires us to determine the effect of an individual's illiteracy on the enforcement of an arbitration agreement, which the individual admits he signed, but because of his illiteracy, denies he understood. The district court held that the individual's illiteracy, coupled with a lack of oral disclosure, rendered the agreement procedurally unconscionable. We conclude the district court erred and REVERSE.

I

Washington Mutual Finance Group ("WM Finance") is a financial institution providing, among other things, consumer credit services. John Phinizee, Willie Curry ("Curry"), Beulah Tate ("Tate"), Violet Smith ("Smith"), John Bailey ("Bailey") and Helen Spellman ("Spellman") (collectively "the Illiterate Appellees") obtained loans from WM Finance or its predecessors. As part of the same transaction, the Illiterate Appellees also purchased credit, life, disability, and property insurance from American Bankers Life Assurance Company of Florida, American Security Insurance Company, Union Security Life Insurance Company and American Bankers Insurance Company of Florida (collectively "the Insurer Appellants"). Each of the Illiterate Appellees signed an agreement to arbitrate any disputes they might have with WM Finance.

Sometime thereafter, a dispute did arise.  The Illiterate Appellees and Miriah Phinizee, wife of Illiterate Appellee John Phinizee,[1] sued WM Finance and the Insurer Appellants in Mississippi state court, alleging primarily that they were sold and charged for insurance that they did not need or want.  In response, WM Finance brought separate federal actions under the Federal Arbitration Act (FAA)[2] against the Illiterate Appellees and Miriah Phinizee, seeking an order staying the state actions and compelling the appellees to arbitrate their disputes.  The Insurer Appellants, who were also defendants in the state court suit, intervened.  The district court consolidated the cases into the instant one.

The district court was persuaded by the Illiterate Appellees' arguments.  It found that they were illiterate and that WM Finance

---

[1]Miriah Phinizee did not sign an arbitration agreement with WM Finance.  She claims to have co-signed the loan and insurance documents along with her husband, a claim that WM Finance disputes.  It is undisputed, however, that her husband signed an arbitration agreement in connection with these same documents.

[2]The FAA, 9 U.S.C. § 4, reads:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .  [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

4

never specifically informed them that they were signing arbitration agreements. The district court went on to conclude that these circumstances rendered the arbitration agreements procedurally unconscionable and therefore unenforceable. The district court also found that Miriah Phinizee did not sign an arbitration agreement and therefore could not be compelled to arbitrate. Accordingly, the district court denied WM Finance's motion to compel arbitration, denied the Insurer Appellants' motion for summary judgment, and granted the Illiterate Appellees' motion to dismiss.

On appeal, WM Finance and the Insurer Appellants argue that the district court erred in three ways. First, they contend that the district court failed to correctly apply Mississippi state law. Second, they assert that the district court procedurally erred because it relied on facts outside the pleadings, yet failed to convert the motion to dismiss into a motion for summary judgment. Furthermore, in this respect, it did not allow for adequate

discovery.[3]  Finally, they argue that the district court erred in refusing to compel Miriah Phinizee to arbitrate her claims.

II

We review a grant or denial of a petition to compel arbitration pursuant to § 4 of the FAA <u>de</u> <u>novo</u>.  <u>Will-Drill Resources, Inc. v. Samson Resources Co.</u>, 352 F.3d 211, 214 (5th Cir. 2003).  "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration."  <u>Primerica Life Ins. Co. v. Brown</u>, 304 F.3d 469, 471 (5th Cir. 2002).  Courts conduct a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute.  <u>Id</u>. First, the court must determine whether the parties agreed to arbitrate the dispute.  Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable.  <u>Id</u>.  In this case, the district court based its refusal to compel arbitration on a finding that there was no valid or enforceable arbitration agreement

---

[3]Specifically, the Insurer Appellants contend that the district court relied on facts outside of the pleadings in determining that the Illiterate Appellees were in fact illiterate. Accordingly, the Insurer Appellants assert that the motion to dismiss should have been converted to a motion for summary judgment and they should have been permitted discovery on the issue of the Illiterate Appellees' purported illiteracy.  It appears that the district court did in fact rely on facts outside the pleadings in some aspects.  However, we do not need to address this issue given our conclusion that the appellees' illiteracy, even if established, was insufficient to invalidate the arbitration agreements.

6

between the parties. It did not find, nor do the Illiterate Appellees now argue, that the arbitration clause here is rendered unenforceable by any contrary federal statute or policy. Accordingly, the sole question presented by this appeal is whether the arbitration agreement admittedly signed by the Illiterate Appellees is valid.

The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts -- no more and no less. 9 U.S.C. § 2. See Pennzoil Exploration and Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1064 (5th Cir. 1998) ("Arbitration is a matter of contract between the parties"). Accordingly, in determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Both parties acknowledge that this means Mississippi state law applies here.

Under Mississippi law, a contract can be unconscionable in one of two ways: procedurally and/or substantively. Russell v. Performance Toyota, Inc., 826 So.2d 719, 725 (Miss. 2002). As the district court correctly recognized, because the Illiterate Appellees' argument attacks the formation of the agreement to arbitrate and not the substance of the agreeement itself, the issue here is of the procedural variety. Procedural unconscionability is proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language,

7

disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." Id. (citations omitted). There are no allegations here that the Illiterate Appellees were coerced into signing the arbitration agreements in question, nor is the complexity of the legal language, conspicuousness of the print or the relative bargaining power of the two parties in dispute here today. Evidently recognizing the absence of these more customary grounds, the district court based its finding of procedural unconscionability on its conclusion that the Illiterate Appellees' professed illiteracy rendered them unable to comprehend the arbitration agreement and that they therefore lacked any form of knowledge about the agreement when they signed it. The district court also appeared to rest its finding of unconscionability on the fact that WM Finance failed specifically to inform the Illiterate Appellees that they were signing an arbitration agreement after the Illiterate Appellees had informed WM Finance of their inability to read.

We find both bases of the district court's unconscionability conclusion unsupported by Mississippi law. First, the district court erred in concluding that the Illiterate Appellees' inability to read rendered them incapable of possessing adequate knowledge of the arbitration agreement they signed. The Mississippi Supreme Court has held that, as a matter of law, an individual's inability to understand a contract because of his or her illiteracy is not a

sufficient basis for concluding that a contract is unenforceable. See Mixon v. Sovereign Camp, W.O.W., 125 So. 413, 415 (Miss. 1930) (noting that "the suggestion of illiteracy cannot prevail, for the manifest reason that there cannot be two separate departments in the law of contracts, one for the educated and another for those who are not"). This case is an old one, but its holding has never been contested and accords with subsequent Mississippi Supreme Court cases presenting similar issues. For example, Mississippi courts have consistently held that parties to an insurance contract have an affirmative duty to read that contract and thus, knowledge of the contract's terms is imputed to those parties irrespective of whether they read the contract. In Russell, the Mississippi Supreme Court found that "[i]n Mississippi, a person is charged with knowing the contents of any document that he executes." 826 So.2d at 726. Therefore, "[a] person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him." J. R. Watkins Co. v. Runnels, 172 So.2d 567, 571 (Miss. 1965) (emphasis added). See Tel-Com Management, Inc. v. Waveland Resort Inns, Inc., 782 So.2d 149, 153 (Miss. 2001) (holding that "[t]o permit a party when sued on a written contract, to admit that he signed it . . . but did not read it or know its stipulations would absolutely destroy the value of all contracts"); see also Haggans v. State Farm Fire & Cas. Co., 803 So.2d 1249 (Miss. 2002); Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416 (Miss. 1987).

The same conclusion has been reached by this court and other federal courts construing Mississippi law. See, e.g., Ross v. Citifinancial, Inc., 344 F.3d 458, 464-66 (5th Cir. 2003) (holding that under Mississippi law, signatories to a contract are under an obligation to read the contract before signing it and thus, "are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy") (citations omitted); American Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537 (5th Cir. 2003) (holding that under Mississippi law, "illiteracy alone is not a sufficient basis for the invalidation of an arbitration agreement"); Dixon v. First Family Fin. Servs. Inc., No. 3:01-CV-137BN, 2003 WL 21788959, at *3 (S.D. Miss. July, 15, 2003) (holding that, given a person's affirmative obligation to read a contract under Mississippi law, "[a] person who cannot read has a duty to find someone to read the contract to him") (citations and quotations omitted). Accordingly, we hold that under Mississippi law, the inability to read and understand the arbitration agreement does not render the agreement unconscionable or otherwise unenforceable.

We similarly reject the district court's holding that the agreement is unconscionable and unenforceable because WM Finance failed specifically to inform the Illiterate Appellees that they were signing an arbitration agreement after having been made aware of the Illiterate Appellees' inability to read. As we previously have noted, Mississippi law charges parties to a contract with the

10

obligation to read that contract or "have it read to [them]," Russell, 826 So.2d at 726, and does not permit such a party "to admit that he signed it . . . but did not read it or know its stipulations." Tel-Com Management Inc., 782 So.2d at 153. We find no authority supporting the district court's assertion that illiteracy removes this affirmative obligation from a signatory.

Finally, we reject the Illiterate Appellees' argument -- made and rejected already by the district court and then raised here again on appeal -- that the arbitration clause is procedurally unconscionable because WM Finance misrepresented the nature of the arbitration clause they signed. Specifically, the Illiterate Appellees contend that prior to signing the documents related to the loan and insurance which included the arbitration clause, they informed WM Finance that they could not read and inquired as to the nature of the documents they were signing. The Illiterate Appellees assert that WM Finance's reply -- that they were signing insurance and finance papers -- constituted a misrepresentation that fraudulently induced them into signing the arbitration agreement.

11

We reject this argument for two reasons.[4] First, the representations made by WM Finance here cannot be characterized as fraudulent. The record does indicate that at least some of the Illiterate Appellees asked questions about the nature of the documents they were signing. However, these questions were general in nature, i.e., they were not directed at any particular document in the package of documents they were signing, but referenced the general nature of all the documents, and were met with a general response: you are signing insurance and financial paperwork. This response is not plainly misleading. Indeed, there is no evidence in the record that WM Finance was ever directly asked about the arbitration agreement itself. We thus find no basis to support the Illiterate Appellees' claim that they were misled regarding the contents of the arbitration agreement they signed.

---

[4]WM Finance contends that the question of whether the Illiterate Appellees were fraudulently induced into signing the arbitration agreement is not properly before us, but should be determined by the arbitrator. They cite <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395 (1967) and <u>Primerica Life Ins. Co. v. Brown</u>, 304 F.3d 469 (5th Cir. 2002) for this proposition. This argument, however, mischaracterizes the holding of these two cases. <u>Primerica</u> did hold that a claim of fraudulent inducement should be submitted to the arbitrator. However, it did so only after noting that the fraudulent inducement claim asserted there applied to the entire contract and was therefore "part of the underlying dispute between the parties which, in light of <u>Prima Paint</u> and its progeny, must be submitted to the arbitrator." 304 F.3d at 472. In contrast, where, like here, "the defense relates specifically to the arbitration agreement," a federal court may consider the question as it "relates to the making and performance of the agreement to arbitrate." <u>Id</u>. (citations and quotations omitted).

12

Second, and more important to our reasoning in this appeal, any inaccurate impressions WM Finance's statements may have created would indisputably have been cleared up had the Illiterate Appellees simply complied with their legal obligation to read the contract or have it read to them. The Mississippi Supreme Court has indicated that parties to a contract "will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc., 584 So.2d 1254, 1257 (Miss. 1991); Ross, 344 F.3d at 464-65. The arbitration agreement here was not hidden or disguised; it was printed on a separate document headlined by the following phrase in prominent, all-caps print: "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT." Had the Illiterate Appellees had someone read the document to them, the nature of the document they were signing would have been clear. However, in each case, the Illiterate Appellees failed to do this. Accordingly, there is no basis in Mississippi law for not enforcing the arbitration agreements here.

                                III

Having found enforceable arbitration agreements, we need not address further WM Finance and the Insurer Appellants' argument that the district court improperly granted the Illiterate Appellees' motion to dismiss the complaint. The granting of this motion was premised on the district court's finding that there was

13

no enforceable arbitration agreement.  As we have determined this premise to be incorrect, the granting of the Illiterate Appellees' motion to dismiss is REVERSED.

IV

Finally, we turn to the district court's holding that Miriah Phinizee could not be compelled to arbitrate her claim because although her husband signed the agreement, she never did so herself.[5]  WM Finance and the Insurer Appellants argue that even if Miriah Phinizee did not sign an arbitration agreement, she is nevertheless bound to its terms under ordinary principles of contract and agency law.  We agree.  As the Second Circuit has accurately noted, while arbitration is contractual by nature:

> It does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. [We have made] clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency.

Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (citations and quotations omitted).  See also Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 527 (5th

---

[5]Miriah Phinizee did not obtain any loans or credit insurance from WM Finance herself.  She is suing on loans and credit insurance her husband obtained, which she claims that she co-signed.  WM Finance disputes this fact, claiming that Miriah Phinizee never co-signed any of the obligations she is now suing under.  Either way, however, Miriah Phinizee's entire case hinges on rights arising from her husband's loan and credit insurance transactions as those contractual transactions form the factual basis of each of her claims.

14

Cir. 2000) (recognizing that arbitration can be compelled even when all parties are not signatories to the agreement).

Thus, the issue before us concerns whether Miriah Phinizee is, under ordinary principles of contract law, bound to the terms of the arbitration agreement signed by her husband, but not by her. WM Finance and the Insurer Appellants correctly point out that all of Miriah Phinizee's claims against them arise directly from the loans her husband obtained from WM Finance and the credit insurance he bought in connection with those loans. They thus assert that the arbitration agreement her husband signed is operable against her under the principle of equitable estoppel, which precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes as well. We agree.

Numerous federal circuit courts, including this one, have recognized the operation of the doctrine of equitable estoppel on non-signatories in an arbitration context. See, e.g., Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 728 (8th Cir. 2001); Grigson, 210 F.3d at 527; International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417-18 (4th Cir. 2000); Thomson-CSF, 64 F.3d at 778; Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756-58 (11th Cir. 1993); Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.,

15

659 F.2d 836, 838-39 (7th Cir. 1981).[6]  In <u>International Paper</u>, the

Fourth Circuit explained:

> In the arbitration context, the doctrine [of
> estoppel] recognizes that a party may be
> estopped from asserting that the lack of his
> signature on a written contract precludes
> enforcement of the contract's arbitration
> clause when he has consistently maintained

---

[6]In determining whether a party should be compelled to arbitrate its claims against another, we acknowledge that whether a court should apply state law or "the federal substantive law of arbitrability," <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983), is often an uncertain question.  That said, nearly all federal circuit courts faced with the specific question posed by Miriah Phinizee -- namely, to what extent a non-signatory is bound by an arbitration provision contained in a contract she is suing under -- have applied the federal substantive law of arbitrability to resolve the issue.  <u>See</u>, <u>e.g.</u>, <u>Dominium Austin Partners</u>, 248 F.3d at 728; <u>Grigson</u>, 210 F.3d at 527; <u>International Paper Co.</u>, 206 F.3d at 417-18; <u>Thomson-CSF</u>, 64 F.3d at 778; <u>Sunkist Soft Drinks</u>, 10 F.3d at 756-58; <u>Hughes Masonry Co.</u>, 659 F.2d at 838-39.  <u>But</u> <u>see</u> <u>Fleetwood Enterprises, Inc. v. Gaskamp</u>, 280 F.3d 1069, 1074-75 (5th Cir. 2002) (applying Texas law to determine whether a particular non-signatory was bound by an arbitration agreement).  In explaining its conclusion that federal substantive law applied, the <u>International Paper</u> court reasoned that because the determination of whether a non-signatory is bound by an arbitration provision "presents no state law question of contract formation or validity," a court should "look to the federal substantive law of arbitrability to resolve this question." 206 F.3d at 417 n.4.  We agree with this analysis and thus find it appropriate to apply the doctrine of equitable estoppel as outlined by federal courts without reference to Mississippi law.  However, we also note there is no reason to think Mississippi law would compel a different result in this case; although no Mississippi court has ever explicitly applied equitable estoppel in this context, the Mississippi Supreme Court has clearly held that parties can be compelled to arbitrate disputes regardless of whether they are signatories to the arbitration agreement.  <u>See</u> <u>Smith Barney, Inc. v. Henry</u>, 775 So.2d 722, 727 (Miss. 2001) ("[W]e have held that a written agreement to arbitrate does not necessarily have to be signed by both parties.") (quoting <u>Collins v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 561 So.2d 952, 956 (La.Ct.App. 1990)).

> that other provisions of the same contract
> should be enforced to benefit him. To allow
> [a plaintiff] to claim the benefit of the
> contract and simultaneously avoid its burdens
> would both disregard equity and contravene the
> purposes underlying enactment of the
> Arbitration Act.

International Paper Co., 206 F.3d at 418 (citations and quotations omitted).

Restated, the doctrine of estoppel prevents a party from "having it both ways." Grigson, 210 F.3d at 528. Yet this is precisely what Miriah Phinizee is attempting to do here: suing based upon one part of a transaction that she says grants her rights while simultaneously attempting to avoid other parts of the same transaction that she views as a burden -- namely, the arbitration agreement. We find that the doctrine of equitable estoppel acts to prevent her from taking such inconsistent positions.[7] Accordingly, we REVERSE the district court's denial of WM Finance and the Insurer Appellants' motion to compel Miriah Phinizee to arbitrate her claims.

V

In conclusion, we hold that the district court erred in holding that the arbitration agreements are procedurally unconscionable and therefore, unenforceable. We also hold that the district court erred in not enforcing the arbitration agreement against Miriah Phinizee. Accordingly, we REVERSE the district

---

[7]We should note that Miriah Phinizee fails to respond to these arguments in her brief on appeal.

17

court's denial of WM Finance's motion to compel arbitration and REMAND for entry of an order compelling arbitration for all parties to this action.  We also REVERSE the district court's grant of the appellees' motion to dismiss.

REVERSED and REMANDED FOR ENTRY OF JUDGMENT.