**REPUBLIC FINANCE,
et al. Plaintiffs**

v.

**Tim CAUTHEN, et al. Defendants**

**No. 1:03 CV 309–D–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

Aug. 19, 2004.

Hubert Allen Bernard, Jr., Cofer & Associates, PA, Jackson, MS, for Antonio Mallet, Cantrelly Lucious Patterson, Davie Maurice Simpson, Dorothy Cooperwood, Ruby Sharkey, T.J. Gandy, Tim Cauthen, Officer Willie Harris, Defendants.

James R. Chastain, Jr., Kean Miller Hawthorne, D'Armond McCowan & Jarman, Baton Rouge, LA, for Republic Finance, LLC, Plaintiff.

Robert T. Gordon, Jr., Mitchell, McNutt & Sams, PA, Jackson, for American Heritage Life Insurance Company, First Colonial Insurance Company, Republic Finance, LLC, Plaintiffs.

Anthony C. Harlow, Starnes & Atchison, LLP, Birmingham, AL, for American Heritage Life Insurance Company, First Colonial Insurance Company, Plaintiffs.

William H. Leech, McGlinchey Stafford, Jackson, for American Heritage Life Insurance Company, First Colonial Insurance Company, Republic Finance, LLC, Plaintiffs.

Nicole M. Liechty, Starnes & Atchison, LLP, Birmingham, AL, Ms. Sandra Heskin, Eagan, MN, for American Heritage Life Insurance Company, Plaintiff.

## OPINION GRANTING MOTION TO COMPEL ARBITRATION

DAVIDSON, Chief Judge.

Presently before the Court is the Plaintiffs' motion to compel arbitration pursuant to Section Four of the Federal Arbitration Act. Upon due consideration, the Court finds that the motion should be granted.

### A. Factual and Procedural Background

The Defendants initiated an action in state court alleging various state law claims arising out of consumer loan transactions and the issuance of related insurance policies. In connection with execution of the loan documents, the Defendants signed arbitration agreements. The Plaintiffs, the state court defendants, filed this action seeking an order compelling the Defendants to arbitrate their claims and a stay of the state court action. The Defendants argue, *inter alia,* that the arbitration agreement was fraudulently obtained and is, therefore, not enforceable.

### B. Discussion

#### 1. Subject Matter Jurisdiction

Before addressing the merits of the Plaintiffs' motion, the Court must secure jurisdiction to make such determinations. The Plaintiffs filed their petition to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. Federal jurisdiction, however, is not evoked by merely citing a federal statute. *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.,* 276 F.3d 683, 687 (5th Cir. 2001). The Fifth Circuit has made it clear that the FAA alone does not confer federal jurisdiction. *Id.* at 685. (holding that "[a] party may obtain relief in federal court under the Federal Arbitration Act only when the underlying civil action would otherwise be subject to the court's federal question or diversity jurisdiction."). This action is based upon diversity jurisdiction and there is no argument that diversity and the requisite amount in controversy is lacking. 28 U.S.C. § 1332.

The Defendants' first argument attempts to displace this Court's jurisdiction by asserting that the Plaintiffs have failed to show that the underlying transactions "substantially affects interstate com-

merce." [1] The Defendants insists that the loan and insurance transactions clearly do not "substantially affect interstate commerce."

■ The Defendants fail to recognize that the Supreme Court has addressed this very issue in *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–58, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). The Supreme Court explained that "application of the FAA [is not] defeated because the individual debt-restructuring transactions, taken alone, did not have a 'substantial effect on interstate commerce.'" *Id.* at 56, 123 S.Ct. 2037 (citations omitted). Rather, "Congress Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce'; if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.'" *Id.* at 56–57, 123 S.Ct. 2037 (citations omitted). "Only that general practice need bear on interstate commerce in a substantial way." *Id.* at 57, 123 S.Ct. 2037 (citation omitted).

The Court specifically recognized the impact commercial lending has on the national economy. *Id.* at 58, 123 S.Ct. 2037 ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause."). Additionally, the court rejected the foundation of the Defendant's argument based on the prior holding in *U.S. v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). *Alafabco*, 539 U.S. at 58, 123 S.Ct. 2037 ("nothing in our decision in *Lopez* suggests that those [congressional] limits are breached by applying the FAA to the disputes arising out of the commercial loan transactions in this case.").

■ If there is any lingering doubt as to whether the Plaintiffs' general practice in the aggregate effects interstate commerce, such doubt would rapidly dissipate upon a cursory view of the obvious. Each Plaintiff is a foreign corporation organized under and principally operating in Florida and Louisiana respectively. Based on the bear facts of this case, other similar cases and an affidavit, it is clear that the Plaintiffs' activities represent a sufficient interstate nexus to bring the loan and insurance transactions within the province of this Court. The Defendant, conversely, does not present any contradictory evidence. Resultantly, this Court has secured subject matter jurisdiction and may entertain the Plaintiffs' petition for relief.

2. Standard to Compel Arbitration

■ Congress provided in the Federal Arbitration Act ("FAA") that a written agreement to arbitrate, in a contract involving interstate commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999). The FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 857, 79 L.Ed.2d 1 (1984); *Mouton v. Metro. Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998).

■ The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. *R.M.*

---

1. FAA provides in part that "a written provision in any maritime transaction or a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2 (emphasis added).

*Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir.1992). First, the court must determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996). Once the court finds that the parties agreed to arbitrate, it must then consider whether any federal statute or policy renders the claims nonarbitrable. *R.M. Perez*, 960 F.2d at 538. In conjunction with this inquiry, a party seeking to avoid arbitration must allege and prove that the arbitration provision itself was a product of fraud or coercion; alternatively, that party can allege and prove that another ground exists at law or in equity that would allow the parties' contract or agreement to be revoked. *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 680–81 (5th Cir.1976). As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir.1998).

### a. Agreement to Arbitrate

The parties do not dispute that the Defendants received with the loan and insurance paperwork a separate document entitled "Arbitration Agreement" on which the each of the Defendants placed their signatures. Rather, the Defendants argue that the documents were never explained to them. And, because of the Defendants' inability to read they, therefore, had to rely on the representations of the Plain-

tiffs' employees who did not provide any explanation concerning the arbitration agreement or even its existence. The Defendants insist that there can be no valid agreement because they did not knowingly agree to arbitrate their claims.

Though some of the arbitration agreements vary in form only, each contains an enhanced paragraph warning, "by signing this arbitration agreement, they are limiting any right to punitive damages and giving up the right to a trial in court, both with and without a jury." [2] Despite this and other language discussing the ramifications of arbitration, the Defendants signed the agreements evincing their assent to the terms contained therein.

■ As for the Defendants' inability to read as a defense, the Court finds that this is no barrier to arbitration or contract formation. The Mississippi Supreme Court has routinely held, and the Fifth Circuit agreed, that "parties to an insurance contract have an affirmative duty to read that contract and thus, knowledge of the contract's terms is imputed to those parties irrespective of whether they read the contract." *Washington Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 264–65 (5th Cir.2004); *Tel–Com Mgmt., Inc. v. Waveland Resort Inns, Inc.*, 782 So.2d 149, 153 (Miss.2001); *J.R. Watkins Co. v. Runnels*, 252 Miss. 87, 172 So.2d 567 571 (1965); *Mixon v. Sovereign Camp, W.O.W.*, 155 Miss. 841, 125 So. 413, 415 (1930). In *Bailey*, the Fifth Circuit reversed the dismissal of an arbitration petition. The district court's dismissal was based on finding that the consumers were illiterate and that the finance company had not informed them that they were signing an arbitration agreement. *Bailey*, 364 F.3d at 264. The Appeals Court assigned

---

**2.** Different variations of this language were used throughout the Defendants' business dealings with the Plaintiffs. However, the Court finds the substance of the documents and the result to be the same.

as error the district court's conclusion "that the Illiterate Appellees' inability to read rendered them incapable of possessing adequate knowledge of the arbitration agreement they signed." *Id.*

Therefore, the Court finds that the Defendants' illiteracy does not displace their affirmative duty to read the contract "or have it read to [them]." *Id.* at 265 (*quoting, Runnels,* 172 So.2d at 571). The Court, thus, holds that "an individual's inability to understand a contract because of his or her illiteracy is not a sufficient basis for concluding that a contract is unenforceable." *Bailey,* 364 F.3d at 264. There is clearly a valid agreement to arbitrate and the Defendants' inability to read is no defense to formation.

### b. Scope of Agreement

 Turning to the question of whether the dispute in question falls within the scope of the arbitration agreement, the Defendants' state complaint alleges damages and seeks monetary relief for, *inter alia,* breach of covenant of good faith and fair dealing, civil conspiracy, unconscionability, fraudulent misrepresentation and/or omission, fraud, and breach of fiduciary duty. All of these claims arise out of loan transactions between the Plaintiffs and Defendants; the same transactions in which the Defendants signed the arbitration agreements. The language of the various agreements is sufficiently broad so as to encompass all of the Defendants' claims. Specifically, the agreements require that "any claim, dispute or controversy between undersigned ... and lender arising from or relating to the loan ... shall be resolved by binding arbitration." Such language has repeatedly been held broad enough to "embrace all disputes between the parties having a significant relationship to the contract." *Pennzoil Exploration,* 139 F.3d at 1067; *Hornbeck Offshore*

*Corp. v. Coastal Carriers Corp.,* 981 F.2d 752, 755 (5th Cir.1993) ("arbitration clauses containing the 'any dispute' language ... are of the broad type" and absent allegations of fraud in the inducement, arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the party's claims.). There is no doubt that the Defendants' claims not only have a significant relationship to the granting of loans and issuance of insurance but also arise directly from these transactions. Therefore, the entire dispute falls squarely within the scope of the arbitration agreements.

Since it has been determined that the parties agreed to arbitrate, the Court must assess whether legal constraints external to the parties' agreement foreclose the arbitration of those claims. The Defendants set forth several arguments which they contend require the Court to deny the motion to compel. Each theory will be addressed in turn.

### 3. Fraudulent Inducement

The Defendants allege that they were fraudulently induced to sign the arbitration agreement because the Plaintiffs' employees did not inform them of its existence. The Defendants correctly acknowledge that fraud in the inducement of signing an arbitration agreement is an appropriate consideration for the Court. *See Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 472 (5th Cir.2002). In contrast to fraudulent inducement as to the entire contract which is considered "part of the underlying dispute between the parties which, in light of *Prima Paint* and its progeny, must be submitted to the arbitrator." *Id.* at 472 (citations and quotations omitted).

Unfortunately, the Defendants' argument is premised upon their inability to read the arbitration agreement. The Defendants aver only that the Plaintiffs did

not disclose the existence of the agreement. In support, the Defendants cite a decision by the undersigned in which arbitration was denied where the defendant was illiterate. *Am. Security Ins. Co. v. Lang,* No. 1:01CV 273–D–D, 2002 WL 54021 (N.D.Miss. Jan.2, 2002). What the Defendants conveniently overlook is that the *Lang* holding was vacated by the Fifth Circuit. 54 Fed.Appx. 413, 2002 WL 31718284 (5th Cir. Nov.7, 2002). Again, the Court recites Mississippi law, "parties to an insurance contract have an affirmative duty to read that contract and thus, knowledge of the contract's terms is imputed to those parties irrespective of whether they read the contract." *Bailey,* 364 F.3d at 264–65.

The Defendants were aware of the nature of the transaction taking place, *i.e.,* that they were executing documents to procure financing and insurance. There is no suggestion that the Defendants were coerced into signing the agreements. Nor, is there any indication that the Plaintiffs prevented the Defendants from reviewing the documents or seeking advice from a third party. It is only now, years and months later, that the Defendants cry foul. Under the circumstances, that the Defendants complain of the arbitration provision because they had no knowledge of the same is no defense to its enforcement.[3]

■ Finally, the Fifth Circuit has expressly rejected the precise argument asserted herein by the Defendants. *Bailey,* 364 F.3d at 266. The Court of Appeals in *Bailey* rejected claims of fraudulent inducement by the illiterate defendants on two grounds. *Id.* First, just as the Defendants in the case *sub judice,* the *Bailey* defendants asked about the nature of the documents they were signing. *Id.* The

response received mirrors that complained of here; "you are signing insurance and financial paperwork." *Id.* The court explained that the defendants' general questions were met with general answers. *Id.* Second, the court restated the defendants' affirmative duty to read the contract. *Id.* at 264–65. In short, under Mississippi law even illiterate contracting parties have an obligation to read or have read to them the terms of their agreements. *Id.* at 265 ("[w]e find no authority supporting the district court's assertion that illiteracy removes this affirmative obligation from a signatory.").

### 4. Unconscionability

■ The Defendants contend that the arbitration agreement is unenforceable on grounds of unconscionability. In determining whether an agreement to arbitrate is unenforceable due to unconscionability, the Court refers to state law. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).

■ Under Mississippi law, a court may refuse to enforce a contract, or any clause of a contract, that is found to have been unconscionable when made. *See,* Miss.Code Ann. § 75–2–302 (1972). Mississippi law defines an unconscionable contract as "one such as no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other." *Entergy Miss., Inc. v. Burdette Gin Co.,* 726 So.2d 1202, 1207 (Miss.1998). Under Mississippi law, there are two types of unconscionability: procedural and substantive. *York v. Georgia–Pacific Corp.,* 585 F.Supp. 1265, 1278 (N.D.Miss.1984).

---

**3.** Since the Court does not agree that the agreement was the product of fraud, the Court will not address the Defendant's minimal efforts to include a "clean hands" argument premised on the Defendants' inability to read.

### a. Procedural Unconscionability

A party may establish procedural unconscionability if he proves "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or lack of opportunity to study the contract and inquire about the contract terms." *Id.* at 1278.

■ The Defendants assert that the agreements are procedurally unconscionable because they did not understand what arbitration meant and, therefore, that they could not have voluntarily entered into the contracts. Each of the Defendants were given copies of the agreements which explained in the simplest of terms the basic framework of arbitration and its ramifications. The Court has found that the language is plain and conspicuous throughout the agreements. Yet, the Defendants boldly continue to assert that they did not have "knowledge" that was admittedly provided to them by the Plaintiffs.

To buttress their fledgling procedural argument, the Defendants rely heavily upon the alleged disparity in sophistication and bargaining power between the parties and that they were justified, because of their illiteracy, in relying on the Plaintiffs for assistance. The Defendants do not suggest that they were denied the opportunity to review and discuss the agreements. Suspiciously, there is nothing other than legal argument that discusses the Defendants' respective intelligence or education level. Without testimony or evidence, the Defendants, in conclusory language, contend that they are not as sophisticated or knowledgeable as the Plaintiffs relative to financial and legal matters. And, as has already been discussed, illiteracy under these circumstances is not recognized as a defense. Such averments, without more, are not sufficient to render the contract unenforceable. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir.2002).

### b. Substantive Unconscionability

A party may prove substantive unconscionability if he proves that the terms of the arbitration clause were oppressive. *York*, 585 F.Supp. at 1278. The test is "whether, in light of the commercial background and commercial needs of the particular trade or case, the clause is so one-sided that it is unconscionable under the circumstances existing at the time the contract was made." *Id.* at 1279. Furthermore, "a contract found to be merely improvident will supply no basis for relief." *Id.*

■ Though not formally labeled substantive unconscionability, the Defendants argue that the arbitral forum is biased towards insurance and financial institutions. Of course, the Defendants' suggestions of bias are unsupported by any evidence or binding precedent. In contrast, the Plaintiffs point out that other courts, including the Fifth Circuit, have upheld identical arbitration agreements. *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702 (5th Cir.2002).

■ The party resisting arbitration has the burden of demonstrating why arbitration is not appropriate. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 81, 121 S.Ct. 513, 517, 148 L.Ed.2d 373 (2000). This the Defendants have failed to do. The Defendants' unsubstantiated conclusion is insufficient to render the arbitration agreement unenforceable. Accordingly, the Defendants' argument cannot be sustained in the absence of supportive evidence.

Resultantly, the Defendants have failed in all efforts to render the arbitration

agreements unenforceable due to either procedural or substantive unconscionability.

The Defendants have agreed to arbitrate and their state law claims are encompassed in those agreements. There are no grounds existing at law or in equity that would allow the parties' contracts or agreements to be avoided.

### 6. Stay of Proceedings

In addition to seeking an order compelling the Defendants to submit all pending claims to arbitration, the Plaintiffs also seek to stay the pending state court action.

The Anti–Injunction Act states that:

A court of the United States may not ... stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (2002).

▮▮ The Court finds that in the particular circumstances of this case, a stay is required to protect or effectuate this Court's judgment and order that the controversy between the parties be submitted to arbitration. As discussed above, the Defendants executed valid and enforceable agreements to arbitrate claims arising out of the loan and insurance transactions. The Defendants breached their agreements by filing a state court complaint. The Court finds that the policies embodied in the FAA militate against having ongoing state proceedings at the very time those same claims are the subject of arbitration proceedings.

The Court concludes that the principle of judicial economy, the strong judicial policy favoring arbitration expressed by the Supreme Court, the plain language of the Anti–Injunction Act, and the policies embodied in the FAA warrant a stay of the Defendants' Noxubee County civil action.

### C. Conclusion

In sum, the Court finds that all of the Defendants' claims are covered by the arbitration agreements, and that all of the Defendants' claims are arbitrable. All of the Defendants' claims, therefore, shall be submitted to arbitration in accordance with the terms of the parties' arbitration agreements. For the above stated reasons, the Plaintiffs' motion to compel arbitration of the Defendants' claims is granted. Similarly, the Court finds that the Plaintiffs' motion for stay is also granted.

A separate order in accordance with this opinion shall issue this day.

### ORDER GRANTING MOTION TO COMPEL ARBITRATION

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Plaintiffs' motion to compel arbitration (docket entry 29) is GRANTED;

(2) the Defendants' claims shall be submitted to arbitration in accordance with the parties' agreements;

(3) all proceedings in the case of *Alexander, et al. v. Fidelity National Corp., et al.,* Civil Action No.2002–066, Circuit Court of Noxubee County, Mississippi, relative to these Defendants are STAYED; and

(4) this case is CLOSED.

All itemizations, declarations, and other materials considered by the Court in ruling on these motions are hereby incorporated into and made a part of the record in this action.