Cynthia ZAMORA, Plaintiff,

v.

SWIFT TRANSPORTATION CORPORATION, Defendant.

No. EP–07–CV–452–PRM.

United States District Court, W.D. Texas, El Paso Division.

April 10, 2008.

Lisa A. Elizondo, Elizondo & Hayes, P.C., El Paso, TX, for Plaintiff.

Chris Marie Borunda, Ray Valdez Mcchristian & Jeans A Professional Corporation, EL Paso, TX, for Defendant.

### *ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION*

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendant Swift Transportation Corpora-

tion's ("Swift") "Motion to Stay Court Proceeding Pending Arbitration and Motion to Compel Arbitration," filed on February 29, 2008, and Plaintiff Cynthia Zamora's ("Zamora") "Response to Defendant's Motion to Compel Arbitration," filed on March 10, 2008; and (3) Swift's "Reply to Plaintiff's Response to Stay Proceedings and Motion to Compel Arbitration," filed on April 7, 2008, in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Motion should be denied for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This cause arises in connection with an employment action taken by Swift, a company that transports "freight ... includ[ing] retail and discount department store merchandise, manufacturing goods, paper products, beverage containers[,] and building products." Mot. 2–3. Zamora began working at Swift as a fleet manager in 1993. Org. Pet. 1–2. In 2007, Swift terminated Zamora. On October 23, 2007, Zamora filed her Original Petition in the County Court at Law Number Six in El Paso County, Texas, asserting a claim of employment discrimination on the basis of national origin. *Id.* Swift removed the cause to federal court on December 14, 2007, in accordance with 28 U.S.C. § 1446(b).

In 2002, Zamora signed a document entitled "Non–Driver Handbook Acknowledgment and Agreement" (the "Handbook Agreement") as a condition of continued employment at Swift. Mot. Ex. A. The Handbook provides:

"[i]n the event employment disputes arise between me and the Company, I will be bound by the Alternative Dispute Resolution Policy[,] which provides for final and binding arbitration for all disputes relating to termination of employ-

ment, unlawful discrimination or alleged sexual harassment[,] or other unlawful harassment as defined in the Alternate Dispute Resolution Policy."

*Id.* at Ex. A. The Alternative Dispute Resolution Policy (the "Dispute Policy") is a separate unsigned document that sets forth the procedure for resolving "work-related problems," and includes "a waiver of the parties' rights to a civil court action for a dispute arising out of or relating to the employee's employment...." *Id.* at Ex. A. Swift contends, and Zamora does not dispute, that Zamora was provided with a copy of the Dispute Policy when she signed the Handbook Agreement.

On February 29, 2008, Swift filed the instant Motion to compel the parties to arbitrate Zamora's claim pursuant to the Dispute Policy referenced in the Handbook Agreement, and stay the case pending the outcome of arbitration. *Id.* at 1.

## II. LEGAL STANDARD

Pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 2, "[a] written provision in any ... contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West 2008).

▆▆▆▆ Arbitration is a matter of contract between the parties. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also Volt Info. Scis. v. Bd. of Trs.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("Arbitration ... is a matter of consent, not coercion."). To determine whether a party can be compelled to arbitrate, the Court conducts a two-step inquiry. *JP Morgan Chase & Co. v. Conegie,* 492 F.3d 596, 598 (5th Cir.2007). First, the Court determines whether the

parties agreed to arbitrate the dispute at issue. *Id.* There are two components to this step: (1) "whether there is a valid agreement to arbitrate between the parties," and (2) "whether the dispute falls within the scope of the arbitration agreement." *Id.* State law governs whether the parties agreed to arbitrate a dispute. *First Options of Chicago, Inc.*, 514 U.S. at 944, 115 S.Ct. 1920. As Zamora relies on Texas law in her Response, and Swift does not challenge that reliance, the Court will apply Texas law.

If the Court finds that the parties agreed to arbitrate the dispute at issue, it will move to the second step and determine " 'whether any federal statute or policy renders the claim nonarbitrable.' " *JP Morgan Chase*, at 598 (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir.2004)).

There is no allegation that any federal statute or policy renders Zamora's claim nonarbitrable. Thus, the issues are whether a valid arbitration agreement exists between the parties, and whether Zamora's discrimination claim falls within the scope of any such agreement.

## III. ANALYSIS

According to Swift, Zamora "signed an Arbitration Agreement, which contains a written agreement to arbitrate any disputes between Plaintiff and Defendant." Mot. 3. It contends that the "Arbitration Agreement" is attached to their Motion as Exhibit C. *Id.* Exhibit C contains several documents including (1) the Handbook Agreement, (2) the Dispute Policy, and (3) the Acknowledgment and Receipt document, signed by Zamora, wherein she acknowledges that she read and received a copy of the Dispute Policy. *Id.* at Ex C. Swift does not specify which one of these document constitutes the "Arbitration Agreement."

Zamora appears to assume that Swift intends for the term "Arbitration Agreement" to refer to the Handbook Agreement, as she argues the terms set forth therein are not enforceable because the Handbook Agreement itself is not supported by consideration. Resp. 3–4. Specifically, she contends that it is premised on an illusory promise insofar as Swift retains the ability to unilaterally modify its terms and conditions, including the Dispute Policy, without notice. *Id.* at 2.

### A. Incorporation

The Handbook Agreement expressly binds Zamora to "the [Dispute Policy] which provides for final and binding arbitration." Mot. Ex. A. The Dispute Policy is an unsigned document separate from the Handbook, and there is no argument that it is itself a binding contract. However, the Handbook Agreement may incorporate and make binding the terms of the Dispute Policy. *See Teal Constr. Co. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex.App.-Austin, 2001, pet.denied) ("An unsigned paper may be incorporated by reference in a contract signed by a party sought to be charged.").

 "Under the doctrine of incorporation by reference, where one contract refers to another contract or instrument, the second document may properly constitute part of the original contract." *In re Cappadonna Elec.*, 180 S.W.3d 364, 371 (Tex.App.-Corpus Christi 2005, no pet.). "The specific language used is not important so long as the contract signed by the [party sought to be charged] plainly refers to another writing." *Teal Constr. Co*, 46 S.W.3d at 420. An employment agreement may incorporate, by reference, the terms of a separate document where the agreement directly and expressly refers to the separate document. *In re C & H News Co.*, 133 S.W.3d 642, 645–46 (Tex.

App.-Corpus Christi 2003, orig. proceeding) (finding an arbitration agreement incorporated the terms of an employee handbook where it provided for "arbitration as provided in the Handbook."). "An arbitration agreement is not invalid or unenforceable merely because it is contained in a document incorporated into the contract by reference." *Teal Constr. Co*, 46 S.W.3d at 420.

▮ The Handbook Agreement sets forth: (1) the signee "will be bound by the Alternative Dispute Resolution Policy," and (2) the policies set forth in the Handbook and the Dispute Policy "[are] the sole and entire agreement between [Zamora] and Swift." Mot. Ex. A. By directly and expressly referring to the Dispute Policy, the Court concludes that the Handbook Agreement incorporates the Dispute Policy.

▮ The Dispute Policy provides that: "[t]his agreement is a waiver of the parties' rights to a civil court action for a dispute arising out of or relating to the employee's employment or termination of employment, including unlawful discrimination, sexual harassment or other unlawful harassment, or retaliation; only an arbitrator, not a judge or jury, will decide this dispute." *Id.* at Ex. A. The Court must determine whether the Handbook Agreement, by incorporating the Dispute Policy, constitutes a valid agreement to arbitrate. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 225 (Tex.2003) ("[A]rbitration agreements between an employer and an ... employee are enforceable when there is an agreement that is valid under traditional contract principles.").

**B. Validity of the Handbook Agreement**

▮ "The existence of a valid agreement [to arbitrate] is determined by substantive contract law." *In re Tenet Healthcare Ltd.,* 84 S.W.3d 760, 766–767 (Tex.App.-Houston [1st Dist.] 2002, no pet.). A valid contract requires consideration or mutuality of obligation. *In re C & H News,* 133 S.W.3d at 647.

> "Consideration may consist of either benefits or detriments to the contracting parties. It may consist of some right, interest, profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss or responsibility that is undertaken or incurred by the other party. When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract. A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance."

*Id.* (citations omitted). If a party possesses the right to modify or terminate an arbitration agreement without notice, its promise is illusory, and the agreement is unenforceable. *See, e.g., In re C & H News,* 133 S.W.3d at 647 (arbitration agreement supported by illusory promise where the employer reserved the right to amend its terms and found unenforceable); *Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386, 388–89 (Tex.App.-Houston [14th Dist.] 1998, pet. dism'd) (employer's ability to modify the terms of an employee handbook negated "that [it] was bound by the policies set out in that [handbook]."); *cf. In re Tenet Healthcare Ltd.,* 84 S.W.3d at 766–767 (valid arbitration agreement existed where the employer's right to modify the terms of an employment agreement specifically excepted the arbitration provision).

▮ There is no dispute that Zamora signed the Handbook Agreement, and the Court has already determined that the Dispute Policy is incorporated therein.

The Handbook Agreement provides: "the Company reserves the right to revise, delete, and add to the provisions of the Non–Driver Handbook." Mot. Ex. A. It also states that the "terms and conditions of employment with the Company may be modified at the sole discretion of the Company, with or without cause or notice at any time." *Id.* at Ex. A. These provisions enable Swift to unilaterally amend the terms of the Handbook, including the Dispute Policy, without notice. *See In re C & H News*, 133 S.W.3d at 646 (an employer's right to modify the terms of an employment agreement included modification of an arbitration policy incorporated therein). Consequently, the Court finds that the Handbook Agreement is supported only by an illusory promise and is, therefore, unenforceable. Accordingly, the Court concludes that the Handbook Agreement does not constitute a valid agreement to arbitrate, and holds that Zamora cannot be compelled to arbitrate her employment discrimination claim.

## IV. CONCLUSION

Based on the foregoing analysis of facts and law, the Court is of the opinion that Swift's Motion should be denied.

Accordingly, **IT IS ORDERED** that Defendant Swift Transportation Corporation's "Motion to Stay Court Proceeding Pending Arbitration and Motion to Compel Arbitration" (Docket No. 6) is **DENIED**.