**AMERICAN GENERAL FINANCIAL SERVICES, INC., et al.,**
**Plaintiffs,**

**v.**

**Willie GRIFFIN, Defendant.**

**No. 1:04CV110–D–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

July 26, 2004.

Patrick Ryan Beckett, Emerson Barney Robinson III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Plaintiffs.

Christopher Wayne Cofer, Cofer & Associates, PA, Jackson, MS, for Defendant.

## OPINION GRANTING MOTION TO COMPEL ARBITRATION

DAVIDSON, Chief Judge.

Presently before the Court is the Plaintiffs' motion to compel arbitration pursuant to Section Four of the Federal Arbitration Act. Upon due consideration, the Court finds that the motion should be granted. In accordance with the parties' agreement, the Defendant's claims shall be submitted to arbitration.

### A. Factual and Procedural Background

The Defendant initiated an action in state court alleging various state law claims arising out of consumer loan trans-

actions and the issuance of related insurance policies. In connection with execution of the loan documents, the Defendant signed an arbitration agreement. The Plaintiffs, the state court defendants, filed this action seeking an order compelling the Defendant to arbitrate his claims. The Defendant, who is legally blind, argues, *inter alia,* that the arbitration agreement was fraudulently obtained.

## B. Discussion

### 1. Subject Matter Jurisdiction

■ Before addressing the merits of the Plaintiffs' motion, the Court must secure jurisdiction to make such determinations. The Plaintiffs filed their petition to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. Federal jurisdiction, however, is not evoked by merely citing a federal statute. *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.,* 276 F.3d 683, 687 (5th Cir.2001). The Fifth Circuit has made it clear that the FAA alone does not confer federal jurisdiction. *Id.* at 685. (holding that "[a] party may obtain relief in federal court under the Federal Arbitration Act only when the underlying civil action would otherwise be subject to the court's federal question or diversity jurisdiction."). This action is based upon diversity jurisdiction and there is no argument that diversity and the requisite amount in controversy is lacking. 28 U.S.C. § 1332.

■ The Defendant's first argument attempts to displace this Court's jurisdiction by asserting that the Plaintiffs have failed to show that the underlying transactions "substantially affects interstate commerce."[1] The Defendant insists that the loan and insurance transactions clearly do not "substantially affect interstate commerce" because regulation of insurance is purely a state concern.

What the Defendant fails to recognize is that the Supreme Court has addressed this very issue in *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56–58, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). The Supreme Court explained that "application of the FAA [is not] defeated because the individual debt-restructuring transactions, taken alone, did not have a 'substantial effect on interstate commerce.'" *Id.* at 56, 123 S.Ct. 2037 (citations omitted). Rather, "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce; if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.'" *Id.* at 56–57, 123 S.Ct. 2037 (citations omitted). "Only that general practice need bear on interstate commerce in a substantial way." *Id.* at 57, 123 S.Ct. 2037 (citation omitted).

The Court specifically recognized the impact commercial lending has on the national economy. *Id.* at 58, 123 S.Ct. 2037 ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause."). Additionally, the court rejected the foundation of the Defendant's theory based on the prior holding in *U.S. v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). *Alafabco,* 539 U.S. at 58, 123 S.Ct. 2037 ("nothing in our decision in *Lopez* suggests that those [congressional] limits are breached by applying the FAA to the disputes arising out of the commercial loan transactions in this case.").

---

1. FAA provides in part that "a written provision in any maritime transaction or a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2 (emphasis added).

If there is any lingering doubt as to whether the Plaintiffs' general practice in the aggregate effects interstate commerce, such doubt would rapidly dissipate upon a cursory view of the transactional processes involved. In order to preserve precious judicial resources and avoid restating the obvious, the Plaintiffs have presented sufficient proof of an interstate nexus in approximately two and a half pages, single spaced, response to the issue. The Defendant, conversely, does not present any contradictory evidence. Resultantly, this Court has secured subject matter jurisdiction and may entertain the Plaintiffs' petition for relief.

### 2. Standard to Compel Arbitration

Congress provided in the Federal Arbitration Act that a written agreement to arbitrate, in a contract involving interstate commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999). The FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 857, 79 L.Ed.2d 1 (1984); *Mouton v. Metro. Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir.1998).

The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992). First, the court must determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996). Once the court

finds that the parties agreed to arbitrate, it must then consider whether any federal statute or policy renders the claims nonarbitrable. *R.M. Perez,* 960 F.2d at 538. In conjunction with this inquiry, a party seeking to avoid arbitration must allege and prove that the arbitration provision itself was a product of fraud or coercion; alternatively, that party can allege and prove that another ground exists at law or in equity that would allow the parties' contract or agreement to be revoked. *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 680–81 (5th Cir.1976). As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability. *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1065 (5th Cir.1998).

### a. Agreement to Arbitrate

The parties do not dispute that the Defendant signed documents containing an arbitration clause. Nor do the parties dispute that the Defendant received with the loan and insurance paperwork a separate document entitled "Arbitration Agreement and Waiver of Jury Trial" on which the Defendant placed his initials. Rather, the Defendant argues that the documents he signed were never explained to him. In other words, because the Defendant was unable to read he, therefore, had to rely on the representations of the Plaintiffs' employees who did not provide any explanation concerning the arbitration agreement. The Defendant insists that there can be no valid agreement because he did not "knowingly agree to arbitrate his claims."

It is undisputed that the various arbitration agreements bear the signatures of the Defendant. In an enhanced paragraph above the Defendant's signature on the loan application is a clause that warned, "by signing below, you agree to the Arbi-

tration Provisions ... your rights and lenders rights will be determined by an arbitrator, not a judge or jury ... that you have read, and agree to all the terms of the arbitration provision, including the waiver of a jury or judge trial."[2] Despite this and other language discussing the ramifications of arbitration, the Defendant signed the agreements evincing his assent to the terms contained therein.

■ As for the Defendant's inability to read as a defense, the Court finds that this is no barrier to arbitration or the formation of a contract. The Mississippi Supreme Court has routinely held, and the Fifth Circuit agreed, that "parties to an insurance contract have an affirmative duty to read that contract and thus, knowledge of the contract's terms is imputed to those parties irrespective of whether they read the contract." *Washington Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 264–65 (5th Cir.2004); *Tel–Com Mgmt., Inc. v. Waveland Resort Inns, Inc.*, 782 So.2d 149, 153 (Miss.2001); *J.R. Watkins Co. v. Runnels*, 252 Miss. 87, 172 So.2d 567 571 (1965); *Mixon v. Sovereign Camp. W.O.W.*, 155 Miss. 841, 125 So. 413, 415 (1930). In *Bailey*, the Fifth Circuit reversed the dismissal of an arbitration petition. The district court's dismissal was based on finding that the consumers were illiterate and that the finance company had not informed them that they were signing an arbitration agreement. *Bailey*, 364 F.3d at 264. The Appeals Court assigning as error the district court's conclusion "that the Illiterate Appellees' inability to read rendered them incapable of possessing adequate knowledge of the arbitration agreement they signed." *Id.*

Therefore, the Court finds that the Defendant's impairment is akin to illiteracy and does not displace his affirmative duty to read the contract "or have it read to him." *Id.* at 265 (*quoting, Runnels*, 172 So.2d at 571). It is noteworthy and uncontested that the Defendant was accompanied to the Plaintiffs' place of business either by his mother, sister, and/or another relative any of whom could have read the documents to the Defendant. The Court, thus, holds that the "an individual's inability to understand a contract because of his or her illiteracy [or visual impairment] is not a sufficient basis for concluding that a contract is unenforceable." *Bailey*, 364 F.3d at 264. There is clearly a valid agreement to arbitrate and the Defendant's inability to read is no defense to formation.

### b. Scope of Agreement

■ Turning to the question of whether the dispute in question falls within the scope of the arbitration agreement, the Defendant's state court complaint alleges damages and seeks monetary relief for, *inter alia*, fraud, civil conspiracy, emotional distress, fraudulent and negligent misrepresentations, and breach of fiduciary duty. All of these claims arise out of loan and insurance transactions between the Plaintiffs and Defendant; the same transactions in which the Defendant signed the arbitration agreements. The language of the agreements is sufficiently broad so as to encompass all of the Defendant's claims. Specifically, the agreements require arbitration of "all claims and disputes between us ... all claims and disputes arising out of, in connection with, or relating to: My loan from Lender today; any previous loan from Lender." Such language has repeatedly been held to be broad enough to "embrace all disputes between the parties having a significant relationship to the con-

---

**2.** Different variations of this language were used throughout the Defendant's business dealings with the Plaintiffs. However, the Court finds the substance of the documents and the result to be the same.

tract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998); *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir.1993) ("arbitration clauses containing the 'any dispute' language ... are of the broad type" and absent allegations of fraud in the inducement, arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the party's claims.). There is no doubt that the Defendant's claims not only have a significant relationship to the loan transactions but also arise directly from this debtor creditor relationship. Therefore, the entire dispute falls squarely within the scope of the arbitration agreements.

Since it has been determined that the parties agreed to arbitrate, the Court must assess whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims. The Defendant sets forth several arguments which he contends requires the Court to deny the motion to compel. Each theory will be addressed in turn.

### 3. Fraudulent Inducement

■ The Defendant alleges that he was fraudulently induced to sign the arbitration agreement because the Plaintiffs' employees did not inform him of its existence. The Defendant correctly acknowledges that fraud in the inducement of signing an arbitration agreement is an appropriate consideration for the Court. *See, Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir.2002). In contrast to fraudulent inducement as to the entire contract which is considered "part of the underlying dispute between the parties which, in light of *Prima Paint [Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)] and its progeny, must

be submitted to the arbitrator." *Id.* at 472 (citations and quotations omitted).

■ Unfortunately, the Defendant's argument is premised upon his inability to read and, indeed, see the arbitration agreement. The Defendant avers only that the Plaintiffs did not disclose the existence of the agreement, not that the Plaintiffs made any intentional misrepresentations as to the nature of the document. Again, the Court recites Mississippi law, "parties to an insurance contract have an affirmative duty to read that contract and thus, knowledge of the contract's terms is imputed to those parties irrespective of whether they read the contract." *Bailey*, 364 F.3d at 264–65.

■ The Defendant was aware of the nature of the transaction taking place, *i.e.*, that he was executing documents for to procure financing and insurance. There is no proof that the Defendant asked any questions regarding the paperwork or that any false or misleading information was given by the Plaintiffs' employees. Likewise, there is no suggestion that the Defendant was coerced into signing the agreement. Nor, is there any indication that the Plaintiffs prevented the Defendant from having his companion(s) review the documents. It is only now, years and months later, that the Defendant cries foul. Under the circumstances, that the Defendant complains of the arbitration provision because he had no knowledge of the same is no defense to its enforcement.[3]

### 4. Fiduciary Duties

Next, the Defendant challenges the enforceability of the agreement by alleging the Plaintiffs breached good faith and fair dealing and fiduciary duties. This argument, too, is based upon the Defendant's

---

**3.** Since the Court does not agree that the agreement was the product of fraud, the Court will not address the Defendant's mini-

mal efforts to include a "clean hands" argument premised on the Defendant's impairment.

inability to read. However, he goes one step further and asserts that due to his impairment he was unable to review and understand the paperwork and thereby justifiably relied on the Plaintiffs for assistance.

First, this Court will not hear Defendant's complaints concerning his visual disability. As has been repeatedly stated, in the absence of fraud—of which there is no proof—the Defendant's inability to read is no defense under Mississippi law. *See, Washington Mut. Fin. Group, L.L.C. v. Bailey,* 364 F.3d 260, 264–65 (5th Cir. 2004). So without more, this argument is meritless.

■ As for the fiduciary relationship, there is none. Today, the Defendant claims to have relied upon the Plaintiffs for assistance. Yet the Defendant points to no testimony demonstrating his reliance. The Defendant has offered no evidence, other than argument, that he so much as made one inquiry regarding the documents. Moreover, as the Court has already mentioned, the Defendant was accompanied to the Plaintiffs' place of business by at least one relative. Surely, if the Defendant, a blind man, was going to rely and trust someone regarding the transactions it would have been his companion and not the Plaintiffs. The Court finds the Defendant's argument unavailing.

### 5. *Unconscionability*

■ The Defendant contends that the arbitration agreement is unenforceable on grounds of unconscionability. In determining whether an agreement to arbitrate is unenforceable due to unconscionability, the Court refers to state law. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).

■ Under Mississippi law, a court may refuse to enforce a contract, or any clause of a contract, that is found to have been unconscionable when made. *See,* Miss.Code Ann. § 75–2–302 (1972). Mississippi law defines an unconscionable contract as "one such as no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other." *Entergy Miss., Inc. v. Burdette Gin Co.,* 726 So.2d 1202, 1207 (Miss.1998). Under Mississippi law, there are two types of unconscionability: procedural and substantive. *York v. Georgia–Pacific Corp.,* 585 F.Supp. 1265, 1278 (N.D.Miss.1984).

### a. Procedural Unconscionability

■ A party may establish procedural unconscionability if he proves "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or lack of opportunity to study the contract and inquire about the contract terms." *Id.* at 1278.

■ The Defendant asserts that the agreement is procedurally unconscionable because he did not have the knowledge to understand what arbitration meant and, therefore, he could not have voluntarily entered into the contracts. In addition to the documents containing the arbitration clause, the Defendant was given a document explaining arbitration and how arbitration works in the simplest of terms. Had the Defendant bothered to read the agreement and related documents or have them read to him he would have easily been able to understand its plain language. In light of the Defendant's affirmative duty under Mississippi law to read or have the contract read to him, the Court will not now hear the Defendant's complaint that he lacked knowledge because he had no opportunity to inquire about the documents.

Apart from his grievance that the Plaintiffs' employees did not explain the agree-

ment, which the Court has already rejected as a defense, the Defendant does not show that he was denied the opportunity to review and discuss the agreement. Suspiciously, there is nothing other than legal argument that discusses the Defendant's intelligence or education level. Without testimony or evidence, the Defendant, in conclusory language, contends that he is not as sophisticated or knowledgeable as the Plaintiffs relative to financial and legal matters. Such averments, without more, are not sufficient to render the contract unenforceable. *Fleetwood Enter., Inc. v. Gaskamp,* 280 F.3d 1069, 1077 (5th Cir. 2002). Therefore, the Defendant has failed to establish that the agreement is procedurally unconscionable.

### b. Substantive Unconscionability

A party may prove substantive unconscionability if he proves that the terms of the arbitration clause were oppressive. *York,* 585 F.Supp. at 1278. The test is "whether, in light of the commercial background and commercial needs of the particular trade or case, the clause is so one-sided that it is unconscionable under the circumstances existing at the time the contract was made." *Id.* at 1279. Furthermore, "a contract found to be merely improvident will supply no basis for relief." *Id.*

Though not formally labeled substantive unconscionability, the Defendant argues that the arbitral forum is biased towards insurance and financial institutions. Of course, the Defendant's suggestions of bias are unsupported by any evidence or precedent. In contrast, the Plaintiffs point out that under the agreement the Defendant may possibly choose from three different arbitration fora. Certainly, the Defendant is not insisting that all possible arbitration forums are bias.

The party resisting arbitration has the burden of demonstrating why arbitration is not appropriate. *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 81, 121 S.Ct. 513, 517, 148 L.Ed.2d 373 (2000). This the Defendant has failed to do. The Defendant's unsubstantiated conclusion is insufficient to render the arbitration agreement unenforceable. Accordingly, the Defendant's argument cannot be sustained in the absence of supportive evidence.

The Defendant's repeated recitation of legal principals without any facts justifying the application of such maxims as "unclean hands," "good faith and fair dealing," and "unconscionability" are not sufficient to render the agreement unenforceable. The Defendant has agreed to arbitrate and his state law claims are encompassed in that agreement. There are no grounds existing at law or in equity that would allow the parties' contract or agreement to be avoided.

### 6. Stay of Proceedings

In addition to seeking an order compelling the Defendant to submit all pending claims to arbitration, the Plaintiffs also seek to stay the Defendant's pending state court action.

The Anti–Injunction Act states that:

A court of the United States may not ... stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (2002).

The Court finds that in the particular circumstances of this case, a stay is required to protect or effectuate this Court's judgment and order that the controversy between the parties be submitted to arbitration. As discussed above the Defendant executed a valid and enforceable agreement to arbitrate claims arising out of the loan and insurance transactions. The Defendant breached this agreement

by filing his state court complaint. The Court finds that the policies embodied in the FAA militate against having ongoing state proceedings at the very time those same claims are the subject of arbitration proceedings.

The Court concludes that the principle of judicial economy, the strong judicial policy favoring arbitration expressed by the Supreme Court, the plain language of the Anti–Injunction Act, and the policies embodied in the FAA warrant a stay of the Defendant's Clay County civil action.

### C. Conclusion

In sum, the Court finds that all of the Defendant's state court claims are covered by the arbitration agreement, and that all of the Defendant's claims are arbitrable. The Defendant's claims, therefore, shall be submitted to arbitration in accordance with the terms of the parties' arbitration agreement. For the above stated reasons, the Plaintiffs' motion to compel arbitration shall be granted.