Janus **KULPA**, M.D. and Medical Care Center, **P.L.L.C.**, Plaintiffs

v.

**OM FINANCIAL LIFE INSURANCE COMPANY** f/k/a Fidelity & Guaranty Life Insurance Co., et al, Defendants.

Civil Action No. 1:07cv1136HSO–JMR.

United States District Court,
S.D. Mississippi,
Southern Division.

April 28, 2008.

Ben F. Galloway, III, Owen & Galloway, PLLC, Gulfport, MS, for Plaintiffs.

Kelly D. Simpkins, Joseph Spencer Young, Jr., Wells, Marble & Hurst, PLLC, Jackson, MS, Lara Ashley Coleman, Richard D. Gamblin, Barfield & Associates, Madison, MS, for Defendants.

*ORDER AND REASONS GRANTING MOTIONS OF DEFENDANTS OM FINANCIAL LIFE INSURANCE COMPANY AND PROFESSIONAL BUSINESS SERVICES, LLC, TO COMPEL ARBITRATION, AND GRANTING DEFENDANT PROFESSIONAL BUSINESS SERVICES, LLC, MOTION TO STAY PROCEEDINGS*

HALIL SULEYMAN OZERDEN, District Judge.

BEFORE THE COURT is the Motion [21] of Defendant OM Financial Life Insurance Company ("OM Financial"), to Compel Arbitration of Plaintiffs' Claims, filed in the above captioned cause on or about December 31, 2007. Plaintiffs Janus Kulpa, M.D., and Medical Care Center, P.L.L.C., filed a Response [32] on or about February 6, 2008. Defendant OM Financial filed a Reply [39] on or about February 19, 2008.

Also before the Court is the Motion [27] of Defendant Professional Benefit Company, LLC, d/b/a Professional Business Services, LLC ("PBS"), to Compel Arbitration of Plaintiffs' Claims, and its Motion [30] to Stay Further Proceedings, filed in the above captioned cause on or about January 22, 2008, and January 23, 2008, respectively. Defendants Vance Syphers ("Syphers") and Wealth Preservation Group, LLC ("Wealth Preservation Group") filed a Joinder [29] on or about January 22, 2008. Plaintiffs filed a Response [34] to PBS' Motions and a Response [36] to Sypher and Wealth Preservation Group's Joinder on or about February 6, 2008. Defendants PBS, Syphers, and Wealth Preservation Group filed a Reply [40] on or about February 22, 2008.

After careful consideration of the parties' submissions, the record in this case, and the relevant legal authorities, and for the reasons discussed below, the Court finds that the Motions to Compel Arbitration should be granted and that the Motion to Stay Further Proceedings should be granted.

## I. *FACTUAL AND PROCEDURAL HISTORY*

Plaintiffs assert that Defendants Agilis Benefit Services of Texas ("Agilis") and PBS developed a prototype life insurance plan to be marketed to medical practitioners throughout the country. Defendants Syphers and Wealth Preservation Group in turn marketed this plan to Plaintiffs sometime in 2006. *See* Pl.'s Compl. ¶¶ 12–13; *see also* Mem. in Supp. of PBS' Mot. to Compel at p. 2. This plan, known as the "ExTRA" program, was an allegedly patent-pending technique that offered an asset-protected, financed executive benefit for key executives through a license fee arrangement. *See* Mem. in Supp. of PBS' Mot. to Compel at p. 2.

There is no serious dispute that in December 2006, Plaintiff Medical Care Center entered into an Intellectual Property License Agreement with PBS wherein Plaintiff was granted rights to the "ExTRA" program. *See id.* at p. 3; *see also* PBS Intellectual Property License Agreement, attached as Ex. "F" to OM Financial's Mot. to Compel and as Ex. "A" to PBS' Mot. to Compel. Section 10.4 of this Intellectual Property License Agreement states that:

> 10.4 Arbitration. All disputes arising between the parties under this Agreement will be settled by arbitration conducted in the English language in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The parties will cooperate with each other in causing the arbitration to be held in as efficient and expeditious a manner as practicable. Any arbitration

proceeding instituted under this Agreement will be brought in a mutually agreeable neutral territory. Any award rendered by the arbitrators will be final and binding upon the parties hereto. Judgment upon the award may be entered in any court of record of competent jurisdiction. Each party will pay its own expenses of arbitration and the expenses of the arbitrators will be final and binding upon the parties hereto. Judgment upon the award may be entered in any court of record of competent jurisdiction. Each party will pay its own expenses of arbitration and the expenses of the arbitrators will be equally shared unless the arbitrators assess as part of their award all or any part of the arbitration expenses of one party (including reasonable attorneys' fees) against the other party. Each party irrevocably and unconditionally consents to the jurisdiction of any such proceeding and waives any objection that it may have to personal jurisdiction of the laying of venue of any such proceeding.

PBS Intellectual Property License Agreement, attached as Ex. "F" to OM Financial's Mot. to Compel and as Ex. "A" to PBS' Mot. to Compel.

Plaintiffs maintain that Defendants Agilis, PBS, Syphers, and Wealth Preservation Group next advised Medical Care Center, as part of the wealth protection/tax sheltering plan, to form a limited liability company, which was to be wholly funded through an insurance policy on the life of Plaintiff Kulpa. *See id.* ¶ 14–18. As a result, Plaintiffs established Toros Holdings, LLC ("Toros Holdings"), in December 2006. *See id.* ¶ 18. The Toros Holdings Operating Agreement was adopted by its two members, Dr. Kulpa, the managing, non-preferred member, and Executive Benefit Group, LP, the non-managing, preferred member. It states in relevant part as follows:

15.2 Arbitration

Any controversy, claim or dispute of whatever nature arising between the parties, including but not limited to those arising out of or relating to this Agreement or the construction, interpretation, performance, breach, termination, enforceability or validity of this Agreement or the arbitration provisions contained in this Agreement, whether the claim existed before or arises on or after the date of this Agreement, including the determination of the scope of this Agreement to arbitrate, which is not settled through mediation under Section 15.1 must be determined by arbitration in accordance with the Commercial Arbitration Rules of the American Association and its Supplementary Procedures for Large, Complex Disputes.

Toros Holdings Operating Agreement, attached as Ex. "E" to OM Financial's Mot. to Compel and as Ex. "B" to PBS' Mot. to Compel.

Plaintiffs claim that, in an effort to fund the plan, Defendants Syphers, Wealth Preservation Group, Agilis and PBS acted as agents for OM Financial and promoted certain types and amounts of insurance. *See id.* ¶ 16. On or about December 12, 2006, OM Financial issued a life insurance policy identified as No. L0778436 ("the Policy") to Toros Holdings on the life of Kulpa. *See id.* ¶ 18. The Policy contains an Arbitration Clause Endorsement stating that:

**ANY CONTROVERSY ARISING UNDER THIS POLICY, OR ANY AMENDMENTS TO OR BREACH OF THIS POLICY, WILL BE DETERMINED AND SETTLED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION HELD IN YOUR COUNTY OF RESIDENCE UNLESS ANOTHER LOCATION IS MUTUALLY AGREED UPON BY BOTH PARTIES, IN ACCORDING WITH THE**

ARBITRATION RULES AND PRO-CEDURES OF JAMS/ENDISPUTE OR ITS SUCCESSOR. ARBITRA-TION PROCEEDINGS SHALL COM-MENCE WITHIN A FIXED PERIOD OF TIME FOLLOWING THE FIRST NOTIFICATION OF ONE PARTY BY THE OTHER OF THEIR ELECTION TO ARBITRATE A DISPUTE RE-GARDING THE POLICY. THE AR-BITRATORS WILL BE SELECTED FROM JAMS/ENDISPUTE'S PANEL OF RETIRED JUDGES. ALL ARBI-TRATION PROCEEDINGS SHALL BE PAID BY US, WITH THE EX-CEPTION OF THE COST OF REP-RESENTATION OF THE POLICY OWNER. SHOULD THE ARBITRA-TOR FIND THAT THE DISPUTE IS WITHOUT SUBSTANTIAL JUSTIFI-CATION, THE ARBITRATOR SHALL HAVE THE AUTHORITY TO ORDER THAT THE COST OF THE ARBITRATION PROCEEDINGS BE PAID BY THE POLICY OWNER. ANY AWARD RENDERED THROUGH ARBITRATION WILL BE FINAL AND BINDING ON EACH AND ALL PARTIES INVOLVED, AND JUDGMENT MAY BE EN-TERED THEREON IN ANY COURT OF COMPETENT JURISDICTION.

OM Financial Insurance Policy, attached as Ex. "C" to OM Financial's Mot. to Compel.

The OM Financial application for life insurance also contains an "Important Notice" and "Acknowledgment of Arbitration Agreement," which Plaintiff Kulpa signed. It states:

### Important Notice About the Policy of Insurance for Which You Have Applied

THIS DOCUMENT AFFECTS YOUR LEGAL RIGHTS

**Read the following information carefully.**

1. The policy for which you have applied includes a binding arbitration agreement.

2. The arbitration agreement requires that any dispute related to this policy must be resolved by arbitration and not a court of law.

3. The results of the arbitration are final and binding on you and the insurance company.

4. In an arbitration, one or more arbitrators, who are independent, neutral decision makers, render a decision after hearing the positions of the parties.

5. When you accept this insurance policy, you agree to resolve any dispute related to the policy by binding arbitration instead of a trial in court, including a trial by jury.

6. Binding arbitration generally takes the place of resolving disputes by a judge and jury.

7. Should you need additional information regarding the binding arbitration provision in the policy, you may contact our toll free assistance line for F & G Life at (888)573–8797; and for Americom Life & Annuity at (866)746–2624.

**Acknowledgment of Arbitration Agreement**

I have read this statement. I understand that I am voluntarily surrendering my right to have any dispute between the insurance company and myself resolved in court. This means I am waiving my right to a trial by jury.

I understand that upon receipt of the policy, I should read the arbitration clause contained in the policy and that I

have the right to reject this policy within five (5) days of the date of delivery if I do not want to accept the requirement for arbitration.

I understand that this same type of insurance may be available through an insurance company that does not require that policy related disputes be resolved by binding arbitration.

OM Financial Life Insurance Application, attached as Ex. "D" to OM Financial's Mot. to Compel.

After purchasing the Policy, Plaintiffs claim that they learned that the subject life insurance plan did not provide the wealth protection and tax benefits they had been led to believe would accrue. *See id.* ¶ 23. Plaintiffs filed their Complaint and Amended Complaint in this Court on or about October 9, 2007, and October 30, 2007, respectively, asserting claims against all Defendants for rescission, negligent misrepresentation, common law fraud, and civil conspiracy related to the sale of the Policy. Plaintiffs also seek punitive damages.

Defendants OM Financial, PBS, Syphers, and Wealth Preservation Group have filed Motions to Compel Arbitration [21, 27, 29], asserting that Plaintiffs' allegations are subject to arbitration pursuant to the three separate arbitration agreements outlined above.

## II. *DISCUSSION*

In the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ["FAA"], Congress directed that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The effect of this section is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 4 of the FAA provides for entry of an order compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. Under section 4,

if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties the court "being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," shall direct the parties to arbitrate. Further, § 4 declares that "[i]f the making of the arbitration agreement or the failure ... to perform the same be in issue, the court shall proceed summarily to the trial thereof."

*Bhatia v. Johnston,* 818 F.2d 418, 421 (5th Cir.1987) (*quoting* section 4).

The familiar two-step inquiry set forth in *Webb v. Investacorp, Inc.,* 89 F.3d 252 (5th Cir.1996), requires that this Court first determine whether, pursuant to section 4, the parties agreed to arbitrate the dispute in question. This involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Speetjens v. Larson,* 401 F.Supp.2d. 600, 605 (S.D.Miss.2005); *see also Webb,* 89 F.3d at 257–58. "The second step is to determine 'whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims.'" *Webb,* 89 F.3d at 258 (*quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). In resolving the present Motions, the Court must first determine which of the above arbitration agreements may be applicable,

since not all Defendants are signatories to each individual contract.[1]

## A. *When Non–Signatories to Arbitration Agreements May Compel Arbitration*

██ This Circuit has found that non-signatories to arbitration agreements may compel arbitration when: (1) the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory; or (2) application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. *See Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524, 527 (5th Cir.2000). Here, through their claims of misrepresentation, fraud, and conspiracy, Plaintiffs have alleged substantially interdependent and concerted misconduct by all Defendants. Therefore, all Defendants, whether signatories or non-signatories to the subject contracts, may compel arbitration through the arbitration clauses found in the PBS Intellectual Property Agreement and/or the OM Financial Life Insurance Policy. *See Ford Motor Co. v. Ables,* 207 Fed.Appx. 443, 448 (5th Cir.2006). Because PBS is a signatory to the PBS Intellectual Property Agreement, all other non-signatory Defendants may enforce the arbitration clause found in the PBS Intellectual Property Agreement. Similarly, because OM Financial and its agent, Vance Syphers, are signatories to the OM Financial Life Insurance Policy, all other non-signatory Defendants may enforce the arbitration clause found in the OM Financial Life Insurance Policy. But because Plaintiffs do not rely upon the terms of the Toros Holdings Operating Agreement in asserting their claims against Defendants, and because no Defendant was a signatory to the Toros Holdings Operating Agreement, Defendants may not compel arbitration pursuant to the Toros Holdings Operating Agreement. Based on the foregoing, the *Webb* two-step inquiry must be applied in the context of the arbitration agreements contained in the OM Financial Life Insurance Policy and the PBS Intellectual Property Agreement.

## B. *Webb Analysis: Whether Plaintiffs and Defendants Agreed to Arbitrate*

### 1. *Whether there is a Valid Arbitration Agreement Between Plaintiffs and Defendants*

██ In determining the validity of an arbitration agreement, the "parties' intentions control." *McKee v. Home Buyers Warranty Corp.,* 45 F.3d 981, 984 (5th Cir.1995)(*quoting Mitsubishi Motors Corp.,* 473 U.S. at 626, 105 S.Ct. 3346). "[T]he court must look to the body of federal arbitration law," which recognizes that "the question of arbitrability [is to] be addressed with a 'healthy regard for the federal policy favoring arbitration,' with doubts regarding the scope of the agreement resolved in favor of arbitration." *Bhatia,* 818 F.2d at 421 (*quoting Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927). In deciding whether the parties consented to arbitration, courts utilize state law contract principles governing the formation of

---

**1.** PBS and Plaintiff Kulpa are the only signatories to the PBS Intellectual Property Agreement. Fidelity and Guaranty Life Insurance Company's President signed the OM Financial Life Insurance Policy on behalf of the company and the OM Financial Life Insurance application was signed by Vance Syphers as an agent of OM Financial and Plaintiff Kulpa. The Toros Holdings Operating Agreement was signed by Plaintiff Kulpa, but was not signed by any Defendants.

contracts. *See Webb,* 89 F.3d at 258 (*quoting First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)); *see also Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir.2002).

■■■ Under Mississippi law, a person is charged with knowing the contents of any documents that he executes. *See United Credit Corp. v. Hubbard,* 905 So.2d 1176, 1178 (Miss.2004); *J.R. Watkins Co. v. Runnels,* 252 Miss. 87, 172 So.2d 567, 571 (1965)(holding that "[a] person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read"). It is evident from the record that the OM Financial Life Insurance Policy and the PBS Intellectual Property Agreement contain unambiguous and sufficiently visible arbitration clauses, and that each such agreement bears Plaintiff Kulpa's signature. It is also beyond dispute from the plain terms of the "Acknowledgment of Arbitration Agreement" in OM Financial's Life Insurance Agreement that Plaintiff Kulpa understood the consequences of the arbitration agreement in the OM Financial policy and voluntarily chose to accept them. See OM Financial Life Insurance Application, attached as Ex. "D" to OM Financial's Mot. to Compel(stating "I understand that I am voluntarily surrendering my right to have any dispute between the insurance company and myself resolved in court....I understand that upon receipt of the policy, I should read the arbitration clause contained in the policy and that I have the right to reject this policy within five (5) days of the date of delivery if I do not want to accept the requirement for arbitration" and bearing Kulpa's signature immediately below the acknowledgment). Plaintiffs cannot now avoid the terms of these agreements. *See American Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 711 (5th Cir.2002)(right to jury trial was expressly waived by signing arbitration agreement containing "clear and unmistakable capitalized and boldfaced words"); *MS Credit Center, Inc. v. Horton,* 926 So.2d 167, 177 (Miss.2006); *American General Financial Services, Inc. v. Griffin,* 327 F.Supp.2d 678, 682–83 (N.D.Miss.2004).

### 2. Whether Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement

Defendants assert that the language utilized in all three of the agreements is sufficiently "broad" so as to "embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067–68 (5th Cir.1998). According to the Fifth Circuit,

> [t]he question of arbitrability is determined on the basis of the existence of an arbitration clause that on its face appears broad enough to encompass the parties' claims. A presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy: arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue."

*Mar-Len of Louisiana, Inc. v. Parsons-Gilbane,* 773 F.2d 633, 636 (5th Cir.1985)(internal citations omitted).

■ Based upon the law and the presumption in favor of arbitration, the Court is of the opinion that the arbitration clause contained in the OM Financial Life Insur-

ance Policy is sufficiently broad to cover Plaintiffs' claims asserted in this lawsuit. Though "courts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of the contract' from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract," the OM Financial Life Insurance Policy arbitration clause, read in conjunction with the language in the application, uses the phrases "arising under" as well as "related to," thereby "resolving any doubt that [it] is a 'broad' clause." *Pennzoil Exploration & Prod. Co.*, 139 F.3d at 1067; *see also Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164–65 (5th Cir.1998)(holding that when parties agree to an arbitration clause governing "[a]ny dispute ... arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the relationship."); OM Financial Life Insurance Application, attached as Ex. "D" to OM Financial's Mot. to Compel (stating "[t]he arbitration agreement [in the policy] requires that any dispute *related to* this policy must be resolved by arbitration ....")(emphasis added). The Policy expressly provides for reading the OM Financial Life Insurance Policy together with its application. Specifically, the Policy states that the entire contract consists of the Policy along with the application. See OM Financial Life Insurance Policy at p. 7, attached as Ex. "C" to OM Financial's Mot. to Compel.

■■■ Where an arbitration clause is "broad," it is only necessary that the dispute "touch" matters covered by the contract to be arbitrable. *See Pennzoil Exploration & Prod. Co.*, 139 F.3d at 1068. Because the OM Financial Life Insurance Agreement is sufficiently broad to cover Plaintiffs' claims, and because all other

Defendants who are non-signatories to the contract can enforce the arbitration clause through the doctrine of equitable estoppel, the Court need not address the scope of the PBS Intellectual Property Agreement.

**C.  *Webb Analysis: Whether Legal Constraints External to the Agreements Foreclose Arbitration of Plaintiffs' Claims***

■■■ The second step of the Court's analysis entails deciphering " 'whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims.'"  *Webb*, 89 F.3d at 258 (*quoting Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S.Ct. 3346).  Plaintiffs contend that the usual contract defenses "such as fraud, duress, or unconscionability, can be used to invalidate arbitration provisions," and that because Defendants fraudulently induced Plaintiffs to enter into contracts, the arbitration provisions are invalid under Mississippi law.  See Mem. in Supp. of Pls.' Resp. to OM Financial's Mot. to Compel and to PBS' Mot. to Compel at p. 5 (*quoting Vicksburg Partners L.P. v. Stephens*, 911 So.2d 507, 514 (Miss.2005)).

The law on this point is clear: "[o]nly if the allegation of fraud goes specifically to the making of the agreement to arbitrate must a district court address the merits of the fraud claim.  The district court does not address 'claims of fraud in the inducement of the contract generally.'" *Bank One, N.A. v. Coates*, 125 F.Supp.2d 819, 829 (S.D.Miss.2001)(*quoting Snap–On Tools Corp. v. Mason*, 18 F.3d 1261, 1268 (5th Cir.1994)); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).[2]  Though Plaintiffs have as-

**2.**  The Court is not unmindful of *Rogers–Dabbs Chevrolet–Hummer, Inc. v. Blakeney*, 950

So.2d 170, 177 (Miss.2007), which Plaintiffs cite.  It states that "[w]e have made it clear in

serted that Defendants fraudulently induced them to enter into the contracts, the Court cannot conclude that there was fraud in the inducement in the signing of the arbitration agreements themselves. For this reason, the Court is of the opinion that the weight of authority compels the conclusion that there are no legal constraints external to the agreements which foreclose arbitration of Plaintiffs' claims.

## III. CONCLUSION

Based upon the foregoing reasons, Plaintiffs' claims must be submitted to arbitration pursuant to the OM Financial Life Insurance Policy arbitration clause. For the reasons stated in its February 6, 2008, Order [31] denying Plaintiffs' Motion to Conduct Discovery, the Court declines Plaintiffs' invitation to allow limited discovery prior to making its arbitrability ruling. Further, because the record indicates that Defendant Agilis Benefit Services of Texas has been served with process but has not yet made an appearance in this lawsuit, the Court is of the opinion that it is most appropriate to stay the case rather than dismiss it. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992)(noting that a stay is mandatory under section 3 of the FAA but that section 3 does not preclude dismissal of a case with prejudice "when *all* of the issues raised in the district court must be submitted to arbitration").

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion [21] of Defendant OM Financial Life Insurance Company ("OM Financial"), to Compel Arbitration of Plaintiffs' Claims, filed in the above captioned cause on or about December 31, 2007, should be and is hereby **GRANTED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion [27] of Defendant Professional Benefit Company, LLC, d/b/a Professional Business Services, LLC ("PBS") to Compel Arbitration of Plaintiffs' Claims, and the Joinder [29] of Defendants Vance Syphers and Wealth Preservation Group, LLC, both filed in the above captioned cause on or about January 22, 2008, should be and are hereby **GRANTED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion [30] of Defendant Professional Benefit Company, LLC, d/b/a Professional Business Services, LLC ("PBS"), to Stay Further Proceedings, filed in the above captioned cause on or about January 23, 2008, should be and is hereby **GRANTED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, in light of the submission of this case to binding arbitration, the Court finds that though this case is not dismissed or otherwise disposed of, there is no further reason to maintain the case as an open one for statistical purposes. Should further proceedings in this Court become necessary or desirable following arbitration, any party may move to reopen the case. The parties are directed to contact the Court and provide any appropriate

---

prior cases that, when we are called upon to consider whether legal constraints exist external to the agreement which might invalidate the arbitration provisions, the existence of fraud in the formation of the contract may be considered." However, the cases cited in *Blakeney* for this proposition merely acknowledge that legal constraints external to the agreement, such as fraud, duress, or unconscionability, foreclose arbitration of the claims. Because Plaintiffs do not cite to any case, including *Blakeney,* that invalidated an arbitration clause based upon fraudulent inducement of the contract itself, as opposed to the arbitration provision, the Court is not persuaded by this argument.

Orders of Dismissal within five (5) days of the final arbitration decision.

**SO ORDERED AND ADJUDGED.**